**SO ORDERED.**

**SIGNED May 26, 2020.**



_____
**JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE**

# UNITED STATES BANKRUPTCY COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **In re:** | : | **CASE NO. 19-51133** |
| | : | |
| **ROVIG MINERALS, INC.**[1] | : | **CONSOLIDATED CASES** |
| | : | |
| Debtor. | : | **CHAPTER 11** |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING
THE GRANTING OF ORDER APPROVING THE SALE OF ASSETS FREE AND
CLEAR OF LIENS, CLAIMS AND INTERESTS AND PROVIDING FOR THE
TRUSTEE'S AUTHORITY TO ASSUME AND ASSIGN LEASES**

Before the Court, on May 19th, 2020, was the continued hearing ("Assumption and Assignment Hearing") on the Motion to Assume and Assign Unexpired Oil, Gas and Mineral Leases under 11 U.S.C. § 365(b) (P-289) ("the Lease Assumption and Assignment Motion"), filed by Dwayne M. Murray, Chapter 11 Trustee in these consolidated cases (the "Trustee"). Originally scheduled for May 19, 2019 on a negative notice basis was a related hearing, namely,

---

[1] An order has been entered in this case directing the administrative and procedural consolidation of the chapter 11 cases of Rovig Minerals, Inc. (19-51133), last four digits of TIN – 8542, and Rovig Minerals, LLC of MT (19-51134), last four digits of TIN – 8410. The docket in the chapter 11 case of Rovig Minerals, Inc. should be consulted for all matters affecting this case.

2324028v.1

the final hearing ("Final Sale Hearing") on the Motion under 11 U.S.C. § 363(b) and (f) for Preliminary Order (I) Approving Stalking Horse Bid and Auction and Bidding Procedures, (II) Approving Form of Notice Requesting Bids and, if Applicable, Notice of Auction and (III) Setting Date, Time and Place for Potential Auction (P-210) (the "Final Sale Motion"). No objections were timely filed to the Final Sale Motion and the matter was therefore taken off this Court's May 19 docket.

Making appearances at the Assumption and Assignment Hearing were (a) the Trustee, (b) counsel for the Trustee, Michael A. Crawford, (c) counsel for the Unsecured Creditors' Committee, Patrick Garrity, (d) counsel for Golden Hawk Investors LLC ("GHI"), Douglas S. Draper, (e) Gail McCulloch, counsel for the United States Trustee, and (f) Mark Begnaud, counsel for Justiss Oil.

During the hearing on the Lease Assumption and Assignment Motion, the Trustee sought leave to proffer testimony of the Trustee and in fact made the proffer through counsel concerning certain facts deemed necessary to support not only the Lease Assumption and Assignment Motion but also the Final Sale Motion. Although the proffer was made and unopposed by other counsel in attendance, the Court directed the Trustee to prepare an affidavit or declaration in substance mirroring the proffer in order to provide those parties consenting to ECF notification proper notice of the written testimony and a limited opportunity thereafter to oppose this Court's consideration of that written testimony in support of the Final Sale Motion. The Notice, which included the signed Declaration of the Trustee as an exhibit, was filed and served on May 20, 2020 (P-431). Consistent with the Court's directive in open court, it provided parties until 3 p.m. central prevailing time on May 26, 2020 to object to the testimony by Declaration being considered as part of the Court's ruling on the Final Sale Motion.

Given the lack of opposition before the deadline, and considering further, (i) proper notice having been given for the Final Sale Hearing and the Lease Assumption and Assignment Hearing, as evidenced by the certificates of service entered on the docket of the record of this bankruptcy case (ii) the testimony by the Trustee by sworn Declaration, (iii) the stipulations of counsel to the parties to the facts set forth herein or represented by their signatures below (iv) the Court's rulings on the Final Sale Motion and the Lease Assumption and Assignment Motion, and (iv) the arguments of counsel, the Court, for any oral reasons assigned in open court on May 19th 2020, and considering further that the Court will shortly enter two separate orders granting the Final Sale Motion (the "Final Sale Order") and, contingent upon the funding of the post-petition advance necessary to cure and pay pre-petition royalties on the assumed leases, the Lease Assumption and Assignment Motion (the "Lease Assumption and Assignment Order"), the Court hereby issues these written findings to supplement any oral findings made in open court as to the Lease Assumption and Assignment Motion, which shall, together with any oral findings and reasons announced in open court, constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this case pursuant to Bankruptcy Rule 9014.

**IT IS FOUND AND DETERMINED THAT:**

1. The findings of fact and conclusions of law set forth herein ("Findings and Conclusions") constitute the Court's findings and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this case pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated by the Court on the record at

the Lease Assumption and Assignment Hearing are hereby incorporated, to the extent they are not inconsistent with these Findings and Conclusions.

### Jurisdiction and Venue

2. Two involuntary petitions were filed on September 25, 2019 and subsequent orders for relief were entered on October 21, 2019. The cases were administratively consolidated and the Trustee was appointed on December 3, 2019. The Trustee operates the business of Rovig.

3. This Court has jurisdiction to hear and determine the Final Sale Motion and the Lease Assumption and Assignment Motion pursuant to 28 U.S.C. sections 157 and 1334. Further, this proceeding is a core proceeding under 28 U.S.C. sections 157(b)(2)(A), (N) and (O). Venue of this proceeding in this district is proper pursuant to 28 U.S.C. section 1409.

### Statutory Predicates

4. The statutory predicates for these Findings and Conclusions are sections 363 and 365 of the Bankruptcy Code. The Rules applicable to this proceeding include FBRP 2002, 4001, 6004 and 9014.

### Notice

5. As evidenced by the certificates of service filed with this Court, actual written notice of the Final Sale Motion and all Amendments and Settlements thereto, as further supplemented by the Notice of Declaration and Limited Opportunity to Object, the Lease Assumption and Assignment Motion, and the Lease Assumption and Assignment Hearing, and the transactions contemplated thereby, and a reasonable opportunity to object or be heard, has been afforded to all known interested entities and parties in accordance with all applicable requirements, including under Bankruptcy Code sections 102(1) and 363, Bankruptcy Rules

2002, 9007, 9008 and 9014, and Local Rules 2002-1 and 6004-1. The notices are good, sufficient and appropriate under the circumstances, and no other or further notice is or shall be required. The disclosures made by the Trustee were proper, complete, and adequate. On the 17th day of February, 2020 the Trustee filed the Lease Assumption and Assignment Motion (P-289). The Court by Order dated March 16, 2020, continued the question of actual assumption and assignment but determined the pre-petition cure amounts necessary for the Trustee to pay to the Lessors of such Oil and Gas Leases (which include both overriding royalty amounts owed, shut-in lease payments and claims that the leases to be assigned to GHI have been breached and are no longer in full force and effect as of May 31, 2020) ("Lease Claims"). The post-petition royalties due through May 31, 2020, cannot be completely determined until after the closing of the sale with GHI but those sums shall be entitled to administrative priority treatment and will be paid as soon as practicable after determination of the amounts actually due. Accordingly, any amounts due to Lessors under the terms of the Oil and Gas Leases attributable to a period prior to June 1, 2020 will be cured and deemed satisfied in full upon the Trustee's payment of such amount to the Lessors and their assignees under such Oil and Gas Leases.

**Claims Against the Assets to Be Acquired BY GHI Pursuant to the Sale Motion**

6. A number of entities have asserted or may possess claims against the Assets to be acquired by GHI, whether arising under a grant of a Security Interest, applicable State law, or royalty or overriding royalty interests or rights to a production payment or claims of ownership of a working interest against the assets under a " certificate of unit ownership, or otherwise.

7. The Court finds that the value of the assets to be acquired by GHI pursuant to the Final Sale Motion have fluctuated wildly since the entry of the orders for relief and that the cost

of maintaining and operating the assets to be acquired by GHI pursuant to the Final Sale Motion in some months has been greater than the revenue received by the Trustee from such assets.

**Business Judgment**

8. The purchase agreement by and between the Trustee and GHI attached to the Final Sale Order, (the "Purchase Agreement") including the form and total consideration to be realized by the Trustee under the Purchase Agreement, (i) constitutes the highest and best offer received by the Trustee for the assets (the "Purchased Assets") to be sold (the "Sale") through the Purchase Agreement; (ii) is fair and reasonable; and (iii) is in the best interests of the Trustee, the consolidated estate, its creditors and all other parties in interest.

9. The Trustee has demonstrated both (a) good, sufficient, and sound business purposes and justifications for entering into and approving the Purchase Agreement, and (b) compelling circumstances for a sale outside the ordinary course of business, pursuant to Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to Purchaser is necessary and appropriate to maximize the value of the consolidated estates, and the Sale will provide the means for the Trustee to maximize distributions to creditors.

10. The Trustee and his professionals have adequately and appropriately marketed the Purchased Assets in accordance with the Trustee's fiduciary duties. Parties and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets. The Trustee conducted the sale process without collusion and in accordance with his business judgment.

11. The Trustee (i) has full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, (ii) has all of the necessary

2324028v.1

19-51133 - #440  File 05/26/20  Enter 05/27/20 09:15:23  Main Document  Pg 6 of 14

corporate power and authority to consummate the transactions contemplated by the Purchase Agreement, (iii) has taken all corporate action necessary to authorize, approve and consummate the Purchase Agreement, and (iv) subject to entry of these Findings and Conclusions, the Sale Order, the advance of the funds by GHI necessary to pay the pre-petition cure amounts due, and finally the Lease Assumption and Assignment Order, the Trustee needs no further consents or approvals, including any consents or approvals from any non-Debtor entities, other than those expressly set forth in the Purchase Agreement, the Final Sale Order or the Lease Assumption and Assignment Order, to consummate the transactions contemplated thereby.

## Good Faith of Purchaser

12. The sale process was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties in interest. The Purchaser is not an "insider" of the Debtor, as that term is defined in Bankruptcy Code section 101(31), and no officer, director, manager, or other insider of the Debtor or the Trustee holds any interest in, or is otherwise related to, the Purchaser. The Purchaser has no connection to the Debtor.

13. The Purchaser is purchasing the Purchased Assets and has entered into the Purchase Agreement in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects. Neither the Trustee nor Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n).

## Sale of Purchased Assets

14. The consideration provided by the Purchaser pursuant to the Purchase Agreement (a) is fair and reasonable and (b) is the highest or otherwise best offer for the Purchased Assets.

The Purchase Agreement was not entered into, and neither the Trustee nor the Purchaser has entered into the Purchase Agreement or proposes to consummate the Sale for the purpose of escaping liability for debts of the Debtor or (ii) hindering, delaying or defrauding present or future creditors of the Debtor.

15. The Purchaser is not a mere continuation of the Trustee or its estate, and there is no continuity of enterprise between Purchaser and the Trustee. Purchaser has not held itself out to the public as a continuation of any Rovig Entity or the Trustee. Purchaser is not a successor to the Trustee or its estate, and the Sale does not amount to a consolidation, merger, or de facto merger of Purchaser and the Trustee.

16. The Purchaser shall have no successor, transferee, vicarious or similar liability as a result of the acquisition of the Purchased Assets except as specifically set forth in the Purchase Agreement or Order of this Court prior to the entry of the Sale Order. The finding that the Purchaser shall have no successor, transferee or similar liability as a result of the acquisition of the Purchased Assets is consistent with applicable law regarding the effect of sales under 11 U.S.C. §363(b).

17. In addition, GHI shall have no liability to any Lessor whose lease has been assigned to GHI pursuant to the Lease Assumption and Assignment Order for any claim arising for the period prior to June 1, 2020, except for any plugging and abandonment obligations that arise after May 31, 2020 solely with respect to the leases assigned to GHI pursuant to the Lease Assumption and Assignment Order.

**Sale Free and Clear**

18. Pursuant to Bankruptcy Code section 363(f), the transfer of the Purchased Assets to Purchaser will be, as of Closing, a legal, valid, and effective transfer of the Purchased Assets,

which transfer vests or will vest Purchaser with all right, title, and interest of Trustee to the Purchased Assets free and clear of any interest (collectively, "Interests"), including, without limitation: (a) all liens and Encumbrances relating to, accruing, or arising at any time prior to Closing (collectively, "Liens") imposed by agreement, understanding, law, equity, or otherwise (collectively, "Liens"); and (b) any claim for an overriding royalty, royalty, or production payment (collectively, "Claim"). GHI would not have entered into the Purchase Agreement, and would not consummate the transactions contemplated thereby, if the Sale of the Purchased Assets were not free and clear of all Interests, Liens and Claims for periods prior to June 1, 2020.

19. For the avoidance of doubt, the terms "Liens," "Lease Claims," and "Claims," as used in these Findings and Conclusions, include, without limitation, all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, sublicenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of tenants and

subtenants (if any) under Bankruptcy Code section 365(h) or any similar statute, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor or transferee liability or related theories.

20. The conditions of Bankruptcy Code section 363(f) have been satisfied in full. The Seller may sell the Purchased Assets free and clear of any Interests (except the Permitted Encumbrances) because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) have been satisfied. Holders of Claims or Interests or Lessors of the acquired Oil and Gas leases who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2). Any holder of Claims or Interests or lessor claims are adequately protected by having the all such Claims, Interests or Lessor claims that have or may attach to the Purchased Assets attach to the net proceeds of the Sale of the Purchased Assets, in the same order of priority and with the same validity, force, and effect that such Interests had prior to the Sale, subject to any claims and defenses the Trustee and the consolidated estates may possess with respect to such Interests.

**Validity of Sale**

21. The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation Bankruptcy Code sections 105(a), 363(b), 363(f) and 363(m) and all of the applicable requirements of such

sections have been complied with in respect of the transaction. The Sale does not constitute a sub rosa or de facto chapter 11 plan for which approval has not been sought without the protections that a disclosure statement would afford. The proposed sale, as modified by the term sheet attached to the Trustee's Notice of Further Modifications to the Preliminarily-Approved Stalking Horse Bid (P-392), shall be consummated and its terms *incorporated into a Second Amended Chapter 11 Plan*, which shall provide for payments to creditors arising out of the orderly sale of the Debtor's assets, and constitutes a valid exercise of the Trustee's business judgment, and is in the best interests of the estate, its creditors and all parties-in-interest.

### Ownership of Movable Property

22. In addition to the Oil and Gas Leases that are attached to the Final Sale Order and the Lease Assumption and Assignment Order, GHI is acquiring under the Final Sale Order all property described in the Purchase Agreement free and clear of Liens, Claims and Interests, which includes but is not limited to any equipment, contract rights, rights of way, and easements currently owned by the Estate. In addition, to the extent it is necessary to avoid any lien or claim, GHI may require the Trustee to pursue an avoidance action to clear up the GHI title to the Purchased Assets and the Trustee shall retain counsel selected by GHI and the cost of such avoidance litigation would constitute an administrative priority expense of the consolidated estates or of any established litigation trust, as the case may be.

### Releases

23. Upon the closing of the sale, GHI shall be released and discharged from any claims or causes of action held by the Trustee whatsoever, (except with respect to the payment of $750,000.00 to the Trustee, memorialized by a promissory note payable over five years, as set forth in the Purchase Agreement and the approved term sheet.

2324028v.1

**Assumption and Assignment**

24.     Pursuant to §§ 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Trustee's assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the Purchase Agreement, of the Assumed and Assigned Contracts is hereby deemed an appropriate exercise of the Trustee's business judgment and the requirements of §§ 365(b)(1) and 365(f) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

25.     The Assumed and Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of the Buyer in accordance with their respective terms, notwithstanding any provision in any such contract that prohibits, restricts, or conditions such assignment or transfer pursuant to § 365(f) of the Bankruptcy Code. There shall be no accelerations, assignment fees, increases or any other fees charged to the Buyer or the Debtor as a result of the assumption and assignment of the Assumed and Assigned Contracts.  Upon entry of the Lease Assumption and Assignment Order and payment by the Trustee, all holders of Barred Claims, including Lease Claims, shall forever be enjoined from asserting breach of lease claims against GHI.  Any default that may have existed prior to June 1, 2020 has been or will be cured by payment by the Trustee and the Lease Assumption and Assignment Order shall contain a finding that all such holders of Lease Claims have been adequately compensated for any breaches and the transfer to GHI and the assumption of the plugging and abandoning obligations provides holders of Lease Claims adequate assurances of future performance.

**Miscellaneous Findings and Conclusions**

26.     Pursuant to 11 U.S.C. § 1146, the Purchased Assets are being sold in anticipation of a plan of reorganization and are exempt from any stamp, recording or similar tax.

2324028v.1

27. The Bid Procedures governing the marketing and Sale of the Purchased Assets that were approved by the court in the Bid Procedures Order are in the best interest of the estate, and have been fully complied with. No other party submitted a competing bid or sought to qualify as a competing bidder for the Purchased Assets.

28. The terms and conditions of the Purchase and Sale Agreement are an integral part of the sale of the Purchased Assets. In view of: (1) the good faith of the Purchaser, (2) the reasonableness of the purchase price, and (iii) the fact that the terms and conditions of the Purchase Agreement are an integral part of the sale of the Purchased Assets, the reversal or modification on appeal of the Sale Order authorizing the Sale shall not affect the validity or enforceability of the Sale or any of the terms and conditions of the Purchase Agreement, pursuant to 11 U.S.C. §363(m). Moreover, the Sale shall not be affected by any subsequent dismissal or conversion of this Bankruptcy Case or confirmation of the Plan or any other plan, and the Sale Order shall remain valid, binding and enforceable on any trustee and other parties-in-interest notwithstanding any such dismissal, conversion or confirmation of the Plan or any other plan.

29. GHI is the Purchaser.

30. The Court shall retain jurisdiction to interpret, enforce and implement the Sale Order, the Lease Assumption and Assignment Order, the Purchase Agreement, and any and all documents executed and delivered in connection with the Sale, Assignment and the transfer of the Purchased Assets to GHI.

31. Concurrent with these Findings and Conclusions, the Court will sign an order approving the Final Sale Motion as set forth herein, and shall further enter the Lease Assumption and Assignment Order upon representation made by the Trustee that GHI has funded the

2324028v.1

$1,450,000 advance necessary to cure the pre-petition royalties due and owing as fixed by prior Order of this Court. That representation will be sufficiently made by virtue of uploading the proposed Lease Assumption and Assignment Order.

Respectfully Submitted

TAYLOR, PORTER, BROOKS & PHILLIPS, L.L.P
/s/ Michael A. Crawford
Michael A. Crawford (Bar #22315)
450 Laurel Street, 8th Floor (70801)
P. O. Box 2471
Baton Rouge, LA 70821-2471
Telephone: 225-387-3221
Fax: 225-346-8049
*Counsel for the Trustee*

-and-

**Heller, Draper, Patrick, Horn & Manthey, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
(504) 299-3345 - Direct
(504) 299-3399 – Fax
By: /s/Douglas S. Draper

***Counsel to Golden Hawk Investors, LLC***

2324028v.1